**Gary G. HURST, Petitioner,**

v.

**DEPARTMENT OF STATE REVENUE, Respondent.**

No. 49T10–9712–TA–00202.

Tax Court of Indiana.

Dec. 27, 1999.

Belle T. Choate, Indianapolis, Indiana, Attorney for Petitioner.

Jeffrey A. Modisett, Attorney General of Indiana, David A. Arthur, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Respondent.

FISHER, J.

The petitioner, Gary G. Hurst (Hurst), challenges the Department of State Revenue's (Department) finding that Hurst owes controlled substance excise tax (CSET), including penalties and interest, in the amount of $2,470,952.00. Hurst raises two issues for this Court's review:

I. Whether Hurst possessed or received delivery of the substance alleged to be marijuana so as to place him within the purview of the CSET statute.

II. Whether the substance purported to be marijuana by the department was actually marijuana.

### FACTS

The undisputed facts are that on a date prior to November 6, 1993, a commercial rental truck [1] (truck), originating from Arizona and heading to Indiana was stopped in Kansas by the Kansas Highway Patrol. Inside the cargo area of the truck were tires. Packed inside these tires was approximately 30,886.9 grams or 68.094 [2] pounds of marijuana.[3] The Kansas High-

---

1. Throughout the record the parties refer to the vehicle as a U–Haul truck. However, the record also refers to the same commercial rental truck as a trailer, providing the Court with the impression that a trailer was hitched onto the back of an automobile. Because the type of vehicle is inconsequential to the disposition of this case, the Court will refer to the vehicle as a truck.

2. The Court notes that the petitioner's brief states that the amount of marijuana in question was seventy pounds. (Pet'r Br. at 1). A

State Police officer testifying for the Department stated that the amount in question was "roughly 70 pounds." (Trial Tr. at 42). However, once converted, the approximate amount is 68.094 pounds.

3. Although the Court refers to the substance as marijuana, the Court recognizes that Hurst disputes whether the substance found in the truck was actually marijuana. Regardless, the Court will refer to the substance as marijuana.

way Patrol contacted the Indiana State Police and notified them of the impending arrival of the truck.[4] On November 6, 1993, after coordinating with the Kansas Highway Patrol, an Indiana State Police officer and a federal Drug Enforcement Agency (DEA) agent met the truck in Fairview Heights, Illinois.[5] The Indiana State Police officer and the DEA agent then escorted the truck to the Indiana State Police post in Evansville, Indiana, and removed all but 10 pounds of the marijuana.[6] The Indiana State Police then allowed the driver (while under surveillance) to proceed to a restaurant payphone in Oakland City, Indiana, to contact Hurst at his home and notify him of his arrival in Indiana. The driver then requested that Hurst meet him at that restaurant so that he (the truck driver) could follow Hurst back to Hurst's home. Hurst agreed and met the driver at the restaurant.[7] After the truck arrived at the home of Hurst, but before the truck driver could exit the truck, Hurst exited his vehicle and began to walk in the direction of the truck. While on his way to the truck, however, the Indiana State Police arrested Hurst. Therefore, Hurst and the driver of the truck never had the opportunity to communicate with each other. Hurst was subsequently charged with the crime of Con-

spiracy to Deal Marijuana[8] in an amount greater than ten pounds by the State of Indiana.[9] (Pet'r Ex.1.) On November 9, 1993, the Department filed a Jeopardy Finding and a Jeopardy Assessment Notice and Demand against Hurst alleging that he owed CSET and penalties in the amount stated above. See IND.CODE ANN. § 6–7–3–13 (West Supp.1999). On November 10, 1993, Hurst filed a written protest challenging the Department's CSET assessment. On November 25, 1997, the Department issued its Letter of Findings denying Hurst's protest. Hurst then initiated an original tax appeal with this Court on December 12, 1997. This Court then conducted a trial and heard arguments of counsel.

## ANALYSIS AND OPINION

### Standard of Review

This court reviews final determinations of the Department de novo and is bound neither by the evidence nor the issues raised at the administrative level. See IND. CODE ANN. § 6–8.1–9–1(d) (West Supp. 1998); *ANR Pipeline Co. v. Department of State Revenue,* 672 N.E.2d 91, 93 (Ind. Tax Ct.1996).

---

4. The Record does not indicate how the Kansas Highway Patrol initially became aware of the truck while traveling through its jurisdiction. The record is also silent as to how the Kansas Highway Patrol was informed of the truck's final destination in Indiana. What is known, however, is that after contacting the Indiana State Police, the Kansas Highway Patrol, escorted the truck to Illinois.

5. The record does not indicate, what role, if any, Illinois law enforcement agents may have played in this meeting.

6. The testimony provided by Doug Humphrey, the Indiana State Police officer who met the truck in Illinois, appears to be conflicting as to when and where the marijuana was removed from the truck. This conflict in testimony is not crucial to the outcome of the case because the testimony is that the majori-

ty of the marijuana was removed from the truck prior to Hurst's arrest.

7. There is no evidence that suggests that Hurst and the driver of the truck communicated with each other after Hurst met the driver at the restaurant.

8. See IND.CODE ANN. § 35–48–4–10(a)(1)(D) (West 1998).

9. This charge was ultimately dismissed by the State of Indiana. Hurst eventually pled guilty to the charge of Possession of Marijuana (under 30 grams), a Class A misdemeanor, which was based on the discovery of a small amount of marijuana inside the Hurst home after the State Police performed a search. See IND. CODE ANN. § 35–48–4–11(1) (West 1998). This CSET assessment, however, did not include the marijuana that was found in the Hurst home.

## Discussion

### I. Possession or Delivery of the Controlled Substance

Hurst argues that the marijuana was not delivered to him, thus making it impossible for him to have possession and therefore not liable for the CSET assessment.[10] The Department argues that actual possession or delivery is unnecessary in order to fall under the purview of the CSET statute; constructive possession or delivery is all that is required in this case to impute liability under CSET. *See* IND.CODE ANN. § 6–7–3–5 (West Supp.1999). Specifically, section 6–7–3–5 reads:

> Sec. 5 The controlled substance excise tax is imposed on controlled substances that are:
> (1) delivered;
> (2) possessed; or
> (3) manufactured;
> in Indiana in violation of IC 35–48–4 or 21 U.S.C. 841 through 21 U.S.C. 852. The tax does not apply to a controlled substance that is distributed, manufactured, or dispensed by a person registered under IC 35–48–3.

With respect to the issue of delivery, the relevant statute reads:

> Sec. 11. 'Delivery' means:
> (1) an actual or constructive transfer from one (1) person to another of a controlled substance, whether or not there is an agency relationship; or
> (2) the organizing or supervising of an activity described in subdivision (1).

IND.CODE ANN. § 35–48–1–11 (West 1998).

 Under the CSET statute, to be liable,[11] a taxpayer is required to manufac-

ture, possess, or serve as an actor in the actual or constructive transfer of a controlled substance.[12] *See* IND.CODE ANN. § 6–7–3–5 (West Supp.1999); *see also* Paganelli, *supra*, n. 4 at 1301. Since there is no evidence implicating Hurst in the manufacturing of a controlled substance, the Court will deal with whether Hurst either possessed, received or organized delivery of the marijuana. The evidence that suggests participation of Hurst in the delivery of the marijuana is: (1) the fact that Hurst met the driver of the truck at a different location and then escorted the driver to his house (Resp't Br. at 3–4); (2) an interview with Hurst made after his arrest, and (3) a taped phone conversation between Hurst and a third person in Arizona. (Resp't Ex. J at 20.) This, the Department contends, allows a reasonable person to infer that Hurst either received delivery of the marijuana or organized the delivery of the marijuana from Arizona. The Court disagrees.

After his arrest, while in custody of the Indiana State Police, Hurst allowed the State Police to tape a phone conversation between him and another person named Anthony Massey in Arizona. The conversation with Massey took place after Hurst's arrest and also *after* the arrival of the truck, and likely at the behest of the Indiana State Police, suggesting that Hurst was acting in concert with the State Police in order to implicate Massey in the transaction. Because it appears likely that Hurst acted in concert with the State Police, the Court cannot agree with the Department's assertion that Hurst's conduct amounts to an admission of participation in the delivery of the marijuana for two rea-

---

**10.** For general background pertaining to the development of the government's interest in taxing illegal conduct see F. Anthony Paganelli, *Constitutional Analysis of Indiana's Controlled Substance Excise Tax,* 70 IND. L.J. 1301,1304–07 (1995).

**11.** Ownership of a controlled substance is not a triggering event for purposes of assessing CSET. *See Bailey v. Department of State Reve-*

*nue,* 660 N.E.2d 322, 324 (Ind.1995). Instead, the triggering events are the manufacturing, possession, or delivery of a controlled substance. *See id.*

**12.** *See* IND.CODE § 35–48–1–9 (1998) for definition and guidance to the various classifications of controlled substances.

sons: First, under the circumstances the Court is not convinced that the statements made during the phone conversation amount to an admission.[13] Second, assuming arguendo that it is an admission, the Court cannot assign significant weight when this evidence is viewed together with the total evidence. Also, the interview conducted by the State Police does not provide any significant insight as to the events that transpired on the day of his arrest.[14]

Finally, although Hurst agreed to meet the driver at the restaurant and then lead him back to his house, this does nothing to implicate Hurst in the in the delivery of the marijuana. The Court cannot agree that this act alone constituted either an actual or constructive transfer of the marijuana. With the exception of the evidence discussed above, there is no other evidence that suggests involvement on the part of Hurst in the delivery of the marijuana. Without more evidence regarding Hurst's participation in the delivery of the marijuana, the Department's argument regarding delivery must fail. The Court's analysis will now turn to the issue of possession, which is the primary focus of both parties' arguments submitted to this Court.

■ Possession may be actual or constructive. *See Mills v. State,* 177 Ind.App. 432, 440, 379 N.E.2d 1023, 1029 (Ind.Ct. App.1978); *see also U.S. v. Kitchen,* 57 F.3d 516, 520 (7th Cir.1995). In cases where there was no *actual* possession of the controlled substance, there must be a determination as to whether there was constructive possession of the controlled substance. *See Young v. State,* 478 N.E.2d 50, 51 (Ind.1985) (stating that where actual possession is absent, constructive possession may sustain a conviction); *see also Ladd v. State,* 710 N.E.2d 188, 190 (Ind.Ct.App.1999).[15] In a case involving a CSET assessment, as with any case involving a controlled substance, constructive possession can be established when the taxpayer has not only shown the requisite intent *but also* the capability to maintain dominion and control over the controlled substance. *See Thomas v. State,* 260 Ind. 1, 291 N.E.2d 557, 558 (1972); *see also Davenport v. State,* 464 N.E.2d 1302, 1307 (Ind.1984); *Ladd,* 710 N.E.2d at 190 (citing *Godar v. State,* 643 N.E.2d 12, 14 (Ind.Ct.App.1994)); *Jackson v. State,* 588 N.E.2d 588, 591 (Ind.Ct.App. 1992); *U.S. v. Rodriguez* 831 F.2d 162, 167 (7th Cir.1987), *cert. denied,* 485 U.S. 965, 108 S.Ct. 1234, 99 L.Ed.2d 433 (1988) (stating that the Seventh Circuit recognizes the theory of constructive possession and requires that the defendant have dominion and control over the "object").

■ Constructive possession may be shown by direct or circumstantial evidence. *See Rodriguez,* 831 F.2d at 167. Mere proximity to the drug, mere presence on the property where it is located, or

---

**13.** During this conversation, Hurst stated to Massey that packing the marijuana inside the tires was a "neat trick". (Resp't Ex. K at 1–5.) The Court is not convinced, however, in light of the total evidence, that this could be considered an admission. Further, the majority of the remaining conversation between Massey and Hurst focuses mainly on providing the driver of the truck enough money so that he could return to Arizona. (Resp't Ex. K at 1–5.) The Department fails to identify any other statements made by Hurst during the phone conversation that could be construed as an admission.

**14.** The interview was conducted at the Hurst home after his arrest and on the same day as the above-mentioned phone conversation.

The majority of the interview includes testimony from Hurst admitting his involvement in the past with the buying and selling of marijuana prior to the day in issue. What Hurst did in the past does not place him within the purview of the CSET statute. *See* IND. ADMIN. CODE § 6–7–3–5 (West Supp.1999).

**15.** In *Ladd,* the defendant was charged with dealing in Marijuana, which is a Class D felony, after performing a search of the defendant's home where more than thirty grams of marijuana and other incriminating evidence implying the presences of marijuana. *See Ladd,* 710 N.E.2d at 190. The defendant argued in that case that there was insufficient evidence to show that he possessed or intended to deliver marijuana. *See id.*

mere association, without more, is insufficient to support a finding of possession. *See Haynes v. State,* 431 N.E.2d 83, 87 (Ind.1982). When possession is non-exclusive, the defendant's intent and ability to maintain dominion and control over the contraband may be inferred if additional circumstances are present "tending to buttress such an inference." *Ladd,* 710 N.E.2d at 190 (quoting *Lampkins v. State,* 685 N.E.2d 698, 699 (Ind.1997)); *see also Godar,* 643 N.E.2d at 14 (stating "When possession is nonexclusive, it must be shown that the [petitioner] had actual knowledge of the presence and the illegal character of the substance."). The inference of intent must be supported by additional circumstances pointing to the petitioner's knowledge of the nature of the substance and its presence. *See Johnson v. State,* 617 N.E.2d 559, 563 (Ind.Ct.App. 1993) (citing *Bergfeld v. State,* 531 N.E.2d 486, 490 (Ind.1988)). Some additional circumstances that would imply knowledge include: (1) incriminating statements by the petitioner; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the petitioner to the drugs; (5) drugs in plain view; and (6) location of the drugs in close proximity to items owned by the petitioner. *See Ladd,* 710 N.E.2d at 190 (citing *Person v. State,* 661 N.E.2d 587, 590 (Ind.Ct.App.1996)). In addition, the United States Court of Appeals for the Seventh Circuit has also required the prosecution to introduce, as proof of possession, evidence of *some factor* indicating that the petitioner had the authority or the ability to exercise control over the contraband. *See Kitchen,* 57 F.3d at 523 (emphasis supplied).

■ In the present case, the Kansas Highway Patrol intercepted the truck transporting the marijuana from Arizona. The Indiana State Police, in coordination with the Kansas Highway Patrol, escorted the truck to its post in Evansville. There,

the Indiana State Police *removed the majority of the marijuana from the truck, leaving considerably less of the marijuana remaining on the truck.*[16] The Indiana State Police then allowed the driver to proceed to a nearby city and phone Hurst. After meeting the driver in a nearby city and subsequently leading the driver back to his home, Hurst was arrested by the State Police and other law enforcement agents. The Department asserts that, despite the majority of the marijuana being stored at the Indiana State Police post, the doctrine of constructive possession can and should apply to impute CSET liability to Hurst for the entire 30,886.9 grams of marijuana. Again, this Court disagrees.

The facts and evidence do not lead to such conclusion. *See Kitchen,* 57 F.3d at 524 (explaining that the constructive possession cases teach that a petitioner must have ultimate control over the drugs). For example, as discussed earlier, not only does the Department attempt to imply Hurst's involvement in the delivery of the marijuana, but the Department also attempts to impute possession of the marijuana through incriminating statements[17] made by Hurst during an interview after the arrest. (Rep't Ex. J at 18). In this interview, Hurst stated that he received a phone call from someone in Indiana that drove in from Arizona who was cold and needed money to get back to Arizona. During this interview, the Indiana State Police never elicited from Hurst that he in fact *knew* that the cargo of the truck contained marijuana. In fact, the closest statement to an admission was that Hurst had "guessed" that the truck contained marijuana. (Resp't Ex. K at 19.) Yet, in the same interview, Hurst also expressed that he thought the truck might have contained some Mexican "stuff" for him and his wife to sell. (Resp't Ex. K at 19.) Although Hurst stated that he "guessed" the truck might have transported marijua-

---

**16.** *See supra* note 6.

**17.** *See, e.g., Griffin v. State,* 259 Ind. 205, 285 N.E.2d 644, 645 (Ind.1972) (appellant admitted to owning a bottle that contained heroin).

na, a "guess", even when considered with Hurst's actions, cannot be taken to understand that Hurst intended to maintain dominion and control over the contents in the truck. *See Ladd* 710 N.E.2d at 190.

The is no evidence that would prove that Hurst had the intent or the ability to exercise control over the marijuana once the truck arrived at his home. *See Kitchen,* 57 F.3d at 523. There is no evidence that Hurst leased the truck, that he drove the truck, or that he knew what was stored inside the truck prior to his arrest and communication with the Indiana State Police.[18]

In *Ladd,* Judge Riley, writing for the Indiana Court of Appeals, found that the defendant constructively possessed the drugs in issue because the evidence fulfilled two of the additional circumstances listed above. Specifically, "the evidence showed that the drugs were found in plain view and that [drugs] were found in close proximity to items owned by the defendant." *Ladd,* 710 N.E.2d at 191. This serves as a plausible example of how and when it would be reasonable to conclude that a person has both the intent and the capability to exercise dominion and control over a controlled substance. *See id.* Similar facts are not present here. The Court sees no reason to divert from or alter Judge Riley's reasoning.

Although the Court does not believe that Hurst encountered the driver of the truck

carrying the marijuana by mere coincidence, his liability for the CSET is not established partly because the Indiana State Police may have acted too swiftly in effecting its arrest of Hurst, thereby hampering his activity with respect to the marijuana. The Court is not persuaded by a preponderance of the evidence that Hurst either orchestrated or received delivery of the marijuana, or that he possessed the requisite intent or ability to maintain dominion and control over the marijuana in question.

## II. Identity of the Substance.

As a result of the Court's disposition of issue one, the Court finds it unnecessary at this time to provide discussion regarding issue two. Since the Court determined that the CSET assessment should be reversed, the Court finds issue two to be moot.

## CONCLUSION

Based on the foregoing, this Court REVERSES the Department's finding that Hurst owes CSET assessment in the amount stated above.

---

**18.** Even it is assumed that Hurst is liable under the CSET statute for the total amount of marijuana that was assessed to him by the Department, because the Indiana State Police removed the majority of the marijuana prior to Hurst's arrest, it cannot be said that he constructively possessed the marijuana, which was stored in Evansville at the Indiana State Police post.