Dante ADAMS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–9903–CR–130.

Court of Appeals of Indiana.

April 11, 2000.
Rehearing Denied June 1, 2000.
As Amended, June 2, 2000.

Robert W. Hammerle, Joseph M. Cleary, Hammerle, Foster, Allen & Long–Sharp, Indianapolis, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Michael McLaughlin, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

ROBB, Judge

### Case Summary

Dante Adams appeals the denial of his motion to suppress cocaine that was found at his residence pursuant to a tax warrant and subsequent search warrant. We reverse.

### Issues

Adams raises four issues for our review which we consolidate and restate as whether the trial court erred when it denied Adams' motion to suppress.[1]

### Facts and Procedural History [2]

On August 15, 1997, Detective Michael Turner obtained a warrant to search safe deposit boxes registered to Adams. Cocaine was discovered inside the boxes and Adams was charged with dealing in cocaine. However, the warrant to search the boxes was obtained based on information that the room had smelled like marijuana and this information had been obtained

---

1. To the extent that the issue of whether Fourth Amendment protections apply to the Controlled Substance Excise Tax is dispositive, it is not necessary for us to discuss the additional issues raised by Adams, specifically relating to double jeopardy, the statutory procedures involved with the tax warrant, the tax warrant's constitutionality, and good faith.

2. Oral Argument was held on March 8, 2000 in Indianapolis.

weeks prior to the issuance of the warrant. Thus, on March 18, 1998, the trial court judge granted Adams' motion to suppress the cocaine because the search was unreasonable and unconstitutional.

On March 23, 1998, the Indiana Department of Revenue issued a Jeopardy Tax Assessment Notice against Adams based on the cocaine that was obtained as a result of the illegal search. The next day, March 24, 1998, the State filed its motion to dismiss the charges related to the cocaine found in the safe deposit boxes. On March 26, 1998, the prosecutor sent a letter to the Indiana Department of Revenue ("IDR") informing IDR that Adams was not being prosecuted for the cocaine seized from the boxes.

On March 31, 1998, a tax warrant was issued on the Jeopardy Tax Assessment in order to seek to collect a civil tax debt for the cocaine under Indiana's Controlled Substance Excise Tax ("CSET") Act. After receiving notice of the tax assessment, Adams filed a protest letter with IDR. On April 13, 1998, IDR, units from the Marion County Civil Sheriff's Office, and sheriffs from the narcotics branch of the Sheriff's Office executed the tax warrant by entering Adams' home to search for money or property that could satisfy Adams' tax debt.

 During the search, cocaine was discovered "in the stove," r. 174, and "in a bedroom drawer." R. 163.[3] Although a search warrant was thereafter sought, all of the cocaine for which Adams is now being prosecuted was found prior to the search warrant being obtained and served.

Based upon the cocaine found on April 13, 1998, Adams was charged with dealing in cocaine,[4] a Class A felony, and possession of cocaine,[5] a Class C felony. Adams filed a motion to suppress the cocaine which was found during the search, arguing that the cocaine was fruit of the poisonous tree, found solely as a result of the tax warrant issued because of the prior charges that were dismissed. Adams further argued that the tax warrant was invalid and that he was being subjected to double jeopardy. After a hearing on the motion, the trial court denied Adams' motion to suppress. Adams then properly instituted this interlocutory appeal.

Additional facts will be provided as necessary.

### Discussion and Decision

Adams argues that the trial court erred in denying his motion to suppress because the State violated his right to be free from unreasonable search and seizure.

### Unreasonable Search and Seizure— Should the Fourth Amendment Exclusionary Rule Apply to the CSET?

Adams asserts that he was subjected to an unreasonable search and seizure because the tax warrant upon which the search was initiated was solely based upon judicially determined illegally obtained evidence from the case which was dismissed. We note initially that this is a case of first impression in this state, and Adams acknowledges that no Indiana cases address "the applicability of a defendant's federal Fourth Amendment, or Art. One, Sec. 11, rights to the CSET." Brief of Appellant at 4. However, Adams asserts that his rights to be free from unreasonable search and

---

**3.** The State has stated in its brief that "cocaine was found in plain view on the dresser in Defendant's bedroom and in his kitchen ...." citing the record at pages 164, 173, and 174. Brief of Appellee at 3. Nowhere on these pages of the record does it indicate that the cocaine was in plain view. To the contrary, the record reflects that the cocaine was discovered inside a dresser drawer. Further, the State fails to note that the cocaine was found inside a stove. We remind counsel that

a true and accurate reflection of the facts is mandatory, not at counsel's discretion. Such misrepresentations are either careless or manifest an attempt to mislead the court. This is unacceptable appellate practice and in the future, we urge counsel to accurately reflect the facts in his briefs before this court.

**4.** Ind.Code § 35–48–4–1.

**5.** Ind.Code § 35–48–4–6.

seizure do apply to the CSET, that the tax warrant was invalid because it was based entirely on judicially determined illegally obtained evidence, and that the cocaine discovered in his apartment as a result is fruit of the poisonous tree and must also be suppressed.

### A. Application of the Exclusionary Rule

■ The Indiana Supreme Court has concluded that the assessment of the CSET does invoke jeopardy. *Bryant v. State,* 660 N.E.2d 290 (Ind.1995), *cert. denied,* 519 U.S. 926, 117 S.Ct. 293, 136 L.Ed.2d 213 (1996). "[A]ssessing a defendant with a CSET and subsequently prosecuting him or her with the underlying crime (related to delivery, possession or manufacture of a controlled substance) violate[s] double jeopardy." *State v. Mohler,* 694 N.E.2d 1129, 1132 (Ind.1998) (citation omitted). Thus, Adams asserts that because the CSET invokes the constitutional protections against double jeopardy, his Fourth Amendment right to be free from unreasonable search and seizure should be invoked as well. The State disputes that the exclusionary rule should be extended to this situation.

■ Adams cites *Lynn v. West,* 134 F.3d 582 (4th Cir.1998), *cert. denied,* 525 U.S. 813, 119 S.Ct. 47, 142 L.Ed.2d 36 (1998), arguing that it was held therein "that when a state levies a criminal penalty, such as CSET, it must accord the defendant all of his relevant constitutional rights, including the right to be free from unreasonable searches." Brief of Appellant at 4–5.

■ We must agree with Adams. Because the CSET triggers double jeopardy under *Bryant,* and because of the criminal implications involved in situations such as this one, it is necessary to extend Fourth Amendment constitutional protections to the CSET. Of particular import in this

case is that the cocaine which was the basis for the tax warrant was judicially determined to be illegally obtained evidence.[6] Thus, the exclusionary rule applies here and the trial court did err in denying Adams' motion to suppress.

### B. "Fruit of the Poisonous Tree" Doctrine

■ Here, because the tax warrant was, indeed, based solely on cocaine that was judicially determined to be illegally seized evidence, the search was the functional equivalent of a Fourth Amendment search and the exclusionary rule applies. The search of Adams' residence and the resulting discovery of additional cocaine was incident to the tax warrant which was based entirely on illegally seized evidence. The doctrine of the fruit of the poisonous tree

> is one facet of the exclusionary rule of evidence which bars the admissibility in a criminal proceeding of evidence obtained in the course of unlawful searches and seizures. When applied, the doctrine operates to bar not only evidence directly obtained, but also evidence derivatively gained as a result of information learned or leads obtained during an unlawful search or seizure.

*State v. Farber,* 677 N.E.2d 1111, 1114 (Ind.Ct.App.1997), *trans. denied* (citations omitted). Further, all evidence that is obtained as a result of an invalid warrant must be suppressed. *Dolliver v. State,* 598 N.E.2d 525, 529 (Ind.1992). This applies to subsequent searches which would not have occurred but for the discovery of the original illegally obtained evidence. *Id. See also Jett v. State,* 716 N.E.2d 69, 71 (Ind.Ct.App.1999) (holding that "if an otherwise legitimate search occurs only because of the discovery of drugs during an illegal search and seizure, any evidence

---

6. We note that we decide this case narrowly, based on the distinct fact that the evidence that the tax warrant was based on was judicially determined to be illegal evidence. We express no opinion on the issue of the impact of a prosecutor dismissing a case or failing to file charges because the prosecutor realizes that the case will not stand because evidence would not survive a motion to suppress.

discovered in the subsequent search must also be suppressed as fruit of the poisonous tree.").

Thus, because the tax warrant was based on evidence which was judicially determined to have been illegally seized, the exclusionary rule dictates that the CSET warrant based on that evidence and the cocaine which was discovered in Adams' home during the execution of the warrant was fruit of the poisonous tree and must be suppressed.

## C. *Other Considerations*

### 1. *Janis*

■ The State argues that *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), presents a situation similar to the case at bar and supports the conclusion that the Fourth Amendment's exclusionary rule does not apply to tax warrants. We hold that this case is factually distinct from *Janis*, and therefore, it does not affect our decision that the exclusionary rule applies.

In *Janis*, the United States Supreme Court held that "the exclusionary rule precluding use of . . . suppressed evidence in the state criminal proceeding should not be extended to preclude its use by the IRS in subsequent tax collection proceedings." Brief of Appellee at 8 (citing *Janis*, 428 U.S. at 454, 96 S.Ct. 3021).

However, Adams asserts that *Janis* is inapplicable because "[i]n *Janis*, evidence was improperly seized by *state* officials and was excluded. That evidence was subsequently used by the *federal* government for a tax assessment." Brief of Appellant at 5 (emphasis in original). Adams continues his argument by asserting that the United States Supreme Court did not extend the exclusionary rule because of the different sovereigns involved and that here, both the illegal search and subsequent tax warrant were conducted by the State.

The *Janis* holding contemplates the use of previously suppressed evidence in the tax collection proceedings; tax proceedings, incidentally, which are beyond the purview of this court. However, *Janis* does not consider the use of the suppressed evidence as the tool that would ultimately lead to additional charges against the defendant.

Finally, although we recognize the sovereignty distinction between the case at bar and *Janis*, we further note that there is and should be some concern with how closely IDR and the narcotics officers worked on this case. At oral argument defense counsel for Adams brought to our attention that the officer who was at the first search of the safe deposit boxes was also present when the tax warrant was executed and the second search at Adams' home took place.

### 2. *Officer's Interests*

Further arguing that the exclusionary rule should not apply to tax warrant situations, the State cites *Tirado v. Commissioner of Internal Revenue*, 689 F.2d 307 (2d Cir.1982), *cert. denied*, 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983), which states that "agents of the Drug Enforcement Agency [would not] be likely to harbor a general motivating interest in assisting the enforcement of civil tax obligations." The State argues that "[t]he Special Investigation Unit of the Marion County Sheriff's department is not entrusted with the enforcement of our civil tax laws as its 'zone of primary interest.' Detective Turner's obvious goal was not revenue enhancement but enforcement of criminal laws against possession and distribution of controlled substances." Brief of Appellee at 9.

■ Modern interagency cooperation initiatives allow for the rapid exchange of information and expertise to facilitate the investigation and prosecution of defendants for a broad spectrum of criminal activity. Here, the same narcotics officer who was present for the original search of the safe boxes was also present when officials went to serve the tax warrant at Adams' home. Clearly, the cooperation

between IDR and the narcotics officers in this case suggests that there was a common goal to be reached by the two branches working together. The narcotics officers clearly had an interest in seeing Adams eventually prosecuted for drug-related offenses, and IDR was going to gain the tax which had been assessed on the original cocaine. This close connection, although often necessary for effective simultaneous enforcement of disparate provisions of the Indiana Code, raises a final public policy consideration that we feel is essential to address.

### 3. *Risk Created If The Exclusionary Rule Did Not Apply*

 As a matter of public policy, if we were to refuse to extend the exclusionary rule to this case, there would be absolutely no downside risk to officers illegally seizing drug evidence. Certainly, if there were no Fourth Amendment protections when evidence was illegally obtained, the State would have the opportunity to take a second bite at the same apple: assuming evidence was illegally obtained and a criminal prosecution could not result, then IDR could still assess the CSET on all evidence that was illegally obtained. There must be some protection against this practice. Otherwise, the State only stands to gain from illegally obtained evidence: either through a criminal prosecution, and if unsuccessful because of a judicial determination that the evidence was illegal, then the State would assess a tax on the evidence, gain the money, and could initiate further searches with the prospect of identifying further contraband. That was the case here, and we refuse to allow such a result. To hold otherwise would be to declare there is no error in utilizing evidence which was illegally obtained, and we cannot condone such a practice.

### Conclusion

We hold that Fourth Amendment protections, specifically, the exclusionary rule, apply to the CSET when a tax warrant has been based on judicially determined illegally seized evidence. Accordingly, the warrant which resulted in the search of Adams' home and subsequent seizure of contraband was improper because it was based solely on illegally obtained evidence. Thus, the evidence obtained at Adams' home is fruit of the poisonous tree and the trial court erred in denying his motion to suppress.

Reversed.

BROOK, J., and NAJAM, J., concur.