Keith and Mary HALL, Petitioners,

v.

**DEPARTMENT OF STATE REVENUE, Respondent.**

No. 49T10–9306–TA–00036.

Tax Court of Indiana.

Dec. 27, 1999.

Andrew C. Maternowski, Indianapolis, Indiana, Attorney for Petitioners.

Jeffrey A. Modisett, Attorney General of Indiana, David A. Arthur, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Respondent.

FISHER, J.

The petitioners, Keith and Mary Hall (Halls), challenge the Department of State Revenue's (Department) finding that the Halls owe controlled substance excise tax (CSET) in the amount of $11,382,640.00. The Halls have raised several issues for this Court's review; however, the Court will, at this time, dispose of one, which the Court restates as whether the Halls possessed the marijuana in question, making them liable under the CSET statute.

## FACTS and PROCEDURAL HISTORY

The Court has previously reviewed the facts of this case, which are set forth in *Hall v. Indiana Department of State Revenue*, 641 N.E.2d 694 (Ind. Tax Ct.1994) (*Hall I*), rev'd in part and aff'd. in part, 660 N.E.2d 319 (Ind.1995), *cert. denied*, 517 U.S. 1210, 116 S.Ct. 1828, 134 L.Ed.2d 933 (1996). To avoid redundancy, this Court will only discuss relevant factual and procedural history in order to provide insight as to the current posture of the case after the Court's opinion in *Hall I*.[1] The Halls were both arrested and an assessment for unpaid CSET[2] was issued to them. Keith Hall was charged and later convicted of Class D felony marijuana possession.[3] All charges against Mary Hall were dropped. See *Hall I*, 641 N.E.2d at 694. The Halls sought review from this Court.[4] Subsequently, both parties filed

---

1. *See* IND. R. EVID. 201.

2. *See* IND.CODE ANN. § 6–7–3–5 (West 1998 & Supp 1999); *see also* F. Anthony Paganelli, *Constitutional Analysis of Indiana's Controlled Substance Excise Tax*, 70 IND. L.J. 1301, 1304–07 (1995) (describing legislative authority for taxing illegal conduct).

3. *See* IND.CODE ANN. § 35–48–4–11 (West 1998).

4. The Halls petitioned this Court for review of the assessment, claiming the CSET violated their privilege against self-incrimination, as well as their double jeopardy, due process and equal protection rights under the United States and Indiana Constitutions. *See Hall I*, 641 N.E.2d at 694–95. Relying on a companion case, *see Clifft v. Department of State Revenue*, 641 N.E.2d 682, 681–691 (Ind. Tax Ct.1994), *rev'd and aff'd. in part*, 660 N.E.2d

cross motions for summary judgment. In response, the Court determined that the CSET was a punishment subject to the constraints of the Double Jeopardy Clause[5] and that the imposition of the CSET after the attachment of jeopardy by conviction in the criminal case violated the Double Jeopardy Clause. *See id.* at 695. The Court therefore ordered the CSET assessment against Keith Hall vacated. *See id.* The Court also held that, because Mary Hall suffered no previous criminal prosecution or punishment, the Double Jeopardy argument could not apply to her and that the assessment would not be vacated in her case, leaving the disposition of the final determination assessing CSET against her open until present. *See id.*

The Halls subsequently appealed this Court's ruling to the Indiana Supreme Court. On December 27, 1995, the Indiana Supreme Court held that the CSET assessment against the Halls did not violate the Double Jeopardy Clause and that the CSET assessment did not violate the Halls' rights to procedural due process or their privileges against self-incrimination. *See Hall v. Indiana Dep't of State Revenue*, 660 N.E.2d 319, 321–22 (Ind.1995) (*Hall II*). The Indiana Supreme Court reasoned that the CSET assessment in Keith Hall's case did not violate the Double Jeopardy clause because it was assessed prior to the criminal action, which was the second jeopardy. *See id.* at 321.

On November 3, 1997, the Halls filed a Motion to Vacate and Dismiss the CSET Assessment on equitable double jeopardy, cruel and unusual punishment, and disproportionality grounds with this Court.

After several hearings and review of arguments and of additional authority offered by counsel, the Court on July 6, 1998, overruled and denied the Halls' motion. *See Hall v. Indiana Dep't of State Revenue*, No. 49T10–9306–TA–00036 (Ind. Tax Ct. July 6, 1998) (unpublished order denying Petitioners' Motion to Vacate). In the same order, this Court found that the issue of excessive fines was premature and possibly irrelevant because, at that time, the Court did not determine whether the Halls were liable for the CSET tax. *See id.* Instead, the Court opted to save that issue for a later date after conducting a trial to determine the Halls' CSET liability. *See id.* On December 17, 1998, this Court conducted a trial on the matter to determine the Halls' CSET liability.[6] Additional facts will be supplied where necessary.

## ANALYSIS AND OPINION

### Standard of Review

This Court reviews final determinations of the Department de novo and is bound neither by the evidence nor the issues raised at the administrative level. *See* IND.CODE ANN. § 6–8.1–9–1(d) (West Supp.1999); *State ex rel. ANR Pipeline Co. v. Department of State Revenue*, 672 N.E.2d 91, 93 (Ind. Tax Ct.1996).

### Discussion

I. Liability under the CSET statute

Excise taxes are levies on an activity or event. *See* JEROME R. HELLERSTEIN & WALTER HELLERSTEIN, STATE AND LOCAL TAXATION 30 (1988). "An excise tax ... includes taxes sometimes designated by statute or referred to as privilege taxes...." *Id.* (quoting Thomas Cooley, THE LAW OF TAXATION § 45 (4th ed.1924)). Indiana's CSET is imposed on the illegal possession, manufacture, or delivery of

---

310 (Ind.1995). This Court ruled that the CSET did not violate the Halls' privileges against self-incrimination or their rights to equal protection and procedural due process. *See id.* at 689–691.

6. Pursuant to the above-mentioned order, the Court will allow petitioners' counsel to brief and argue the excessive fines issue at a later date.

5. *See* U.S. CONST. amend. V.

specific categorized controlled substances.[7] *See* IND.CODE ANN. § 6–7–3–5 (West Supp. 1999); *See also* Paganelli, *supra*, at 1301 n. 4. The tax does not apply, however, to a controlled substance that is distributed, manufactured, or dispensed by a person registered under IND.CODE § 35–48–3 (1998).

■ Possession may be actual or constructive. *See Hurst*, 721 N.E.2d at 374 (citing *Mills v. State*, 177 Ind.App. 432, 440, 379 N.E.2d 1023, 1029 (Ind.Ct.App. 1978); *United States v. Kitchen*, 57 F.3d 516, 520 (7th Cir.1995); *Young v. State*, 478 N.E.2d 50, 51 (Ind.1985) (stating that where actual possession is absent, constructive possession may sustain a conviction)). In cases where there was no *actual* possession of the controlled substance, there must be a determination as to whether there was constructive possession of the controlled substance. *See Ladd v. State*, 710 N.E.2d 188, 190 (Ind.Ct.App. 1999). Constructive possession can be proven when the taxpayer has shown the requisite intent along with the capability to maintain dominion and control over the controlled substance. *See Thomas v. State*, 260 Ind. 1, 291 N.E.2d 557, 558 (1973); *see also Ladd*, 710 N.E.2d at 190; *United States v. Rodriguez*, 831 F.2d 162, 167 (7th Cir.1987), *cert. denied*, 485 U.S. 965, 108 S.Ct. 1234, 99 L.Ed.2d 433 (1988) (stating that the Seventh Circuit recognizes the theory of constructive possession and requiring that the defendant have dominion and control over the "object").

■ Constructive possession may be shown by direct or circumstantial evidence. *See Rodriguez*, 831 F.2d at 167. Presence in the vicinity of drugs, presence on the property where drugs are located, or mere association with one who possess-

es, without more, is insufficient to support a finding of possession. *See Haynes v. State*, 431 N.E.2d 83, 87 (Ind.1982). When possession is non-exclusive, the petitioner's intent to maintain dominion and control over the contraband may be inferred if additional circumstances are present "tending to buttress such an inference." *Ladd*, 710 N.E.2d at 190 (citing *Lampkins v. State*, 685 N.E.2d 698, 699 (Ind.1997)). Several additional circumstances have been deemed sufficient to allow a trier of fact to reasonably draw the requisite inference of the petitioner's knowledge of the presence and character of the contraband. *See Carnes v. State*, 480 N.E.2d 581, 586 (Ind.Ct.App.1985). Some additional circumstances include: (1) incriminating statements by the petitioner; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting;[8] (4) proximity of the petitioner to the drugs; (5) drugs in plain view; and (6) location of the drugs in close proximity to items owned by the petitioner. *See Ladd*, 710 N.E.2d at 190 (citing *Person v. State*, 661 N.E.2d 587, 590 (Ind.Ct.App.1996)). In addition, the Court of Appeals, in *Corrao v. State of Indiana*, 154 Ind.App. 525, 290 N.E.2d 484, 488 (1972), held that testimony concerning the smell of marijuana can be taken into consideration. *See also Kenner v. State*, 703 N.E.2d 1122, 1127 (Ind.Ct.App. 1999), *trans. denied* (1999). Also, a police officer's testimony that a house "reeked with the odor of marijuana" can support a conviction. *See Bay v. State*, 489 N.E.2d 1220, 1224 (Ind.Ct.App.1986). The odor of marijuana is distinctive and capable of being detected by *trained or experienced* law enforcement officers. *See Kenner*, 703 N.E.2d at 1126 (citing *United States v. Dallas*, 672 F.Supp. 362, 365 (S.D.Ind.

7. Ownership of a controlled substance is not a triggering event for purposes of assessing CSET. *See Hurst v. Department of State Revenue*, 721 N.E.2d 370, 373, n. 11 (Ind. Tax Ct. 1999) (citing *Bailey v. Department of State Revenue*, 660 N.E.2d 322, 324 (Ind.1995), *rev'g* 641 N.E.2d 695 (Ind. Tax Ct.1994)).

Triggering events are the manufacturing, possession, or delivery of a controlled substance. *See id.*

8. *See e.g., Ledcke v. State*, 260 Ind. 382, 296 N.E.2d 412, 416 (1973) (marijuana processing).

1987) (explaining that raw marijuana has a distinctive odor that can readily be detected with experience and training)).

In the case at bar, unlike the companion case of *Hurst v. Department of State Revenue*, at least with respect to Keith Hall, there is no question of possession as Keith Hall has admitted to possessing the marijuana via a thorough and convincing discussion at trial. (Trial Tr. at 19–27.) Therefore, the focus of the Court's analysis now turns to the question of whether, under the CSET statute, Mary Hall possessed the marijuana that was stored in a locked room inside the house.

■ The record indicates that pursuant to a valid search warrant, law enforcement agents entered the Halls' residence located in Indianapolis, Indiana, on February 12, 1993. (Resp't Ex. D.) At that time, Mary Hall was at home alone with her two children. Pursuant to the search warrant, Mary Hall allowed the law enforcement officers to enter and search her home. The officers proceeded down into the basement. In the basement were various items, including a washer and dryer and children's toys. To the left of the bottom step was a room with a locked door. However, Mary Hall was without a key to gain entry. As a result, the law enforcement officer kicked in the door. Upon forced entry, the officer discovered 59 trash bags along with nine cases of mason jars filled with marijuana.[9] The approximate weight of the marijuana was 142,283 grams, upon which the assessment was based.

In *Hurst*, the question turned on whether the petitioner constructively possessed the marijuana. After thoroughly analyzing the facts with the law, this Court held that Hurst did not constructively possess the marijuana and, therefore, was not liable for the CSET. *See Hurst*, 721 N.E.2d at 376. The Court reasoned that because

none of the additional factors articulated by common law could apply to the facts, Hurst could not be found to have constructively possessed the marijuana. *See id.* The facts of this case are similar to those in *Hurst*. However, unlike *Hurst*, an argument can be made here that at least some of the additional factors articulated under the common law can be applied to Mary Hall. *See Ladd*, 710 N.E.2d at 190; *see also Corrao*, 290 N.E.2d at 488; *Kenner*, 703 N.E.2d at 1127; *Bay*, 489 N.E.2d at 1224. However, the Court is not convinced that those additional factors apply to Mary Hall in such a manner that the Department's CSET assessment may be upheld. The Court will analyze those additional factors and explain each.

The first two factors would be that Mary Hall co-owned and lived in a house that contained a drug manufacturing setting, *see Ladd*, 710 N.E.2d at 190 and *Ledcke*, 296 N.E.2d at 416, and that the location of the drugs were in close proximity to items owned by Mary Hall *see Ladd*, 710 N.E.2d at 190. The facts indicate that drugs were discovered behind a closed door, which remained locked. As a result, Mary Hall never had knowledge of a drug manufacturing setting. The facts also indicate that because the door was closed and locked it also separated any personal items that she co-owned with Keith Hall from being in close proximity to the marijuana. Finally, two law enforcement officers testified at trial that the smell of marijuana was so strong that it was apparent upon entry to the front door of the house, prior to going into the basement. (Trial Tr. at 13, 47); *see also Corrao*, 290 N.E.2d at 488.

Conversely, Keith Hall testified at trial that several other people, including his mother, father and a plumber came to the house and never complained of smelling marijuana. (Trial Tr. at 26.) He also testified that potpourri was constantly burning on the stove. The Court is aware

9. Also located inside the room were scales, clear plastic bags and cigarette rolling papers. (Resp't Ex. D.) Keith Hall admitted at trial that all items discovered inside this room belong to only him and none were co-owned by Mary Hall.

of what potpourri is commonly used for, and when burned constantly one could argue that it was done to cover up the smell of the marijuana. However, one can also make a reasonable and convincing argument that the potpourri was simply used to scent the house. Without any evidence supporting either argument, the Court may only agree that the use of potpourri does not automatically lead one to conclude that it is being used to cover the odor of marijuana.

Even assuming *arguendo* that the smell of marijuana emanated throughout the house and that Mary Hall had knowledge of the marijuana as a result, that evidence standing alone is not sufficient to find that Mary Hall exercised dominion and control over the marijuana. *See Ladd*, 710 N.E.2d at 190. The Court of Appeals in *Kenner v. State* stated that the "odor of marijuana is distinctive and capable of being detected by trained or experienced law enforcement officers." 703 N.E.2d at 1126. Did Mary Hall have that same experience and training? At trial, Mary Hall did indicate that she was familiar with the smell of raw marijuana from college parties in the seventies.[10] (Trial Tr. at 36.) However, in responding to the next question, Mary Hall stated that she did not detect the odor of raw marijuana in her house. (Trial Tr. at 36.) In sum, the evidence that does tend to establish that Mary Hall had constructive possession of the marijuana is: (1) Mary Hall co-owned the residence where her husband kept marijuana in a room in the basement; (2) from time to time, Mary Hall washed laundry in the basement near the room, which remained locked, and (3) the odor of marijuana emanated throughout the house.[11] However, the evidence presented does not show that she had the ability or intent to exercise dominion and control over the marijuana and confirms that she lacked constructive possession.

This Court in *Hurst* expressed doubt regarding the petitioner's innocence in that case. *See* 721 N.E.2d at 376. As it did in *Hurst*, by reason of its findings, the Court in the present case is in no way expressing that it has full confidence in Mary Hall's purported innocence. Yet, the evidence presented is the only basis upon which the Court must formulate its decision. The facts and evidence and the inferences to be drawn from them do not establish intent as well as the ability to exercise dominion and control over the marijuana. *See Godar v. State*, 643 N.E.2d 12, 14–15 (Ind.Ct.App. 1994).

## CONCLUSION

Based on the foregoing, this Court AFFIRMS the Department's finding that Keith Hall is liable for the CSET assessment in the amount stated above. However, the Court REVERSES the CSET with respect to Mary Hall. The issue of whether the CSET as applied to Keith Hall is an excessive fine will be dealt with in a separate order.

---

**10.** The Court is convinced, however, that having familiarity with the smell of raw marijuana from college nearly thirty years prior does not make Mary Hall experienced or trained in marijuana odor detection.

**11.** Moreover, with respect to odor, even if Mary Hall knew what the smell was, such knowledge does not mean that she had an ability to exercise dominion and control over it. *See Rodriguez*, 831 F.2d at 167. Without more she cannot be held to have constructively possessed the marijuana. *See id.* Despite

this, even with such knowledge, what is a spouse in this situation required to do to avoid being penalized by a potential excise tax? Leave his or her husband or wife? Turn him or her in to the authorities? Is the specter of tax liability enough to break up a marriage because one spouse is involved in an activity that may cause the other to become liable under the CSET statute? Can one spouse be held liable for this excise tax merely because he or she knows of this activity? These questions remain for another day.