CARROLL COUNTY RURAL
ELECTRIC MEMBERSHIP
CORPORATION, Petitioner,

v.

INDIANA DEPARTMENT OF STATE
REVENUE, Respondent.

No. 49T10–0003–TA–32.

Tax Court of Indiana.

Dec. 2, 2005.

David S. Richey, Randolph G. Holt, Parr Richey Obremskey & Morton, Indianapolis, for Petitioner.

Steve Carter, Attorney General of Indiana, Joel Schiff, Deputy Attorney General, Indianapolis, for Respondent.

FISHER, J.

■ Carroll County Rural Electric Membership Corporation (Carroll County REMC) appeals the final determination of the Indiana Department of State Revenue (Department) holding that as of January 14, 2000, Carroll County REMC's purchase of the trade publication, *The Electric Consumer*, would be subject to the state gross retail (sales) tax. The parties have presented the following issue on appeal: whether *The Electric Consumer* is a newspaper and is therefore exempt from sales tax pursuant to Indiana Code § 6–2.5–5–17.[1]

## FACTS AND PROCEDURAL HISTORY

Carroll County REMC is a local district corporation organized under the Indiana Rural Electric Membership Corporation Act, Indiana Code § 8–1–13. It is in the business of providing electric energy to its members/customers on a cooperative basis. Indiana Statewide Association of Rural Electric Cooperatives, Inc. (Indiana Statewide) is a general district corporation also organized under Indiana Code § 8–1–13. Its members include rural electric membership corporations within the state of

---

1. The Department also claims that the Court lacks subject matter jurisdiction over this appeal. (*See* Resp't Br. at 14.) Specifically, the Department argues that Carroll County REMC has not met the prerequisites for an original tax appeal because it does not seek a refund or seek to enjoin the collection of a tax. (Resp't Br. at 13.) Nevertheless, the Court previously addressed and denied this very argument. *See Carroll County Rural Elec. Membership Corp. v. Indiana Dep't of State Revenue*, 733 N.E.2d 44 (Ind. Tax Ct.2000) (denying the Department's motion to dismiss for lack of subject matter jurisdiction). Furthermore, the Indiana Supreme Court has also declined to address this matter on interlocutory appeal. *See Indiana Dep't of State Revenue v. Carroll County Rural Elec. Membership Corp.*, No. 49S00–0010–TA–582 (Ind. Oct. 23, 2000) (order denying Petition to Accept Jurisdiction of Interlocutory Appeal). Accordingly, the Court declines the Department's invitation to revisit the issue now.

Indiana. Carroll County REMC has been a member of Indiana Statewide since 1936. Indiana Statewide is the publisher of *The Electric Consumer,* the publication at issue in this case. Carroll County REMC purchases *The Electric Consumer* from Indiana Statewide and distributes it free of charge to its members/customers.

In 1998, the Department conducted an audit of Carroll County REMC's sales and use tax returns for the 1995, 1996 and 1997 tax years (the audit years). As a result of the audit, the Department issued proposed assessments against Carroll County REMC for unpaid sales taxes on its purchase of *The Electric Consumer.* Carroll County REMC protested the assessment and an administrative hearing was held. On January 14, 2000, the Department issued its Letter of Findings (LOF), which sustained Carroll County REMC's protest with respect to the audit period, but held that, going forward, *The Electric Consumer* would no longer be considered a newspaper exempt from state sales tax pursuant to Indiana Code § 6–2.5–5–17.

On March 10, 2000, Carroll County REMC initiated an original tax appeal. A trial was held on September 24, 2001 and the Court heard the parties' oral arguments on June 20, 2002. Additional facts will be provided as necessary.

### ANALYSIS AND OPINION

#### Standard of Review

■ This Court reviews final determinations of the Department *de novo.* IND. CODE ANN. § 6–8.1–5–1(h) (West Supp. 2005–2006). Accordingly, it is bound by neither the evidence nor the issues presented at the administrative level. *Snyder v. Indiana Dep't of State Revenue,* 723

N.E.2d 487, 488 (Ind. Tax Ct.2000), *review denied.*

■ When a taxpayer claims entitlement to a tax exemption, the taxpayer bears the burden of showing that the terms of the exemption are met. *North Cent. Indus., Inc. v. Indiana Dep't of State Revenue,* 790 N.E.2d 198, 200 (Ind. Tax Ct.2003). This Court strictly construes an exemption against the taxpayer; however, the Court will not read the exemption so narrowly as to defeat its application to cases rightly within its ambit. *Id.*

### Discussion

Carroll County REMC argues that *The Electric Consumer* is a newspaper and, as such, its purchases thereof are exempt from sales tax. *See* IND. CODE ANN. § 6–2.5–5–17 (West 2000) ("Sales of newspapers are exempt from the state gross retail tax"). The Department counters that *The Electric Consumer* is *not* a newspaper and that it is therefore subject to tax.

Whether or not a publication is considered a newspaper for purposes of the sales tax exemption depends on a number of factors. Specifically, the term "newspaper" includes those publications that are:

(1) commonly understood to be newspapers;

(2) circulated among the general public;

(3) published at stated short intervals;

(4) entered or are qualified to be admitted and entered as second class mail matter at a post office in the county where published; and

(5) printed for resale and are sold.

IND. ADMIN. CODE tit. 45, r. 2.2–5–26(b) (1996).[2] "Publications issued monthly, bi-

---

**2.** Indiana Administrative Code title 45, rule 2.2–5–26 formerly listed an additional factor, requiring that a publication be "published for the dissemination of news of importance and of current interest to the general public, general news of the day, and information of cur-

monthly, or at longer or irregular intervals are generally not considered to be newspapers." 45 IAC 2.2–5–26(e). Furthermore, "[a] preponderance of advertising, lack of authorization to carry legal advertising, or lack of a masthead setting forth the publisher, editor, circulation, and place of publication are characteristics of publications other than newspapers." 45 IAC 2.2–5–26(g). Publications that are primarily devoted to matters of specialized interest such as business, politics, religion, or sports may qualify for exemption if they also satisfy the above-listed criteria. 45 IAC 2.2–5–26(c).

The Department determined that, as of January 14, 2000, *The Electric Consumer* could no longer be considered a newspaper because it failed to meet three of the above-listed criteria. Specifically, the Department argues that *The Electric Consumer* is: (1) not commonly understood to be a newspaper; (2) not circulated among the general public; and (3) not published at stated short intervals. (*See* Resp't Br. at 8–13.) *See also* 45 IAC 2.2–5–26(b). The Court, however, disagrees.

### (1) Is The Electric Consumer Commonly Understood to be a Newspaper?

■  The Department's regulations provide three examples of characteristics that are common to newspapers. Specifically, newspapers have less than a preponderance of advertising, are authorized to carry legal advertising, and have a masthead setting forth the publisher, editor, circulation and place of publication. 45 IAC 2.2–5–26(g). In addition, this Court has previously stated that the type of paper on which a publication is printed is another factor that may indicate whether or not

the publication is a newspaper. *See Emmis Publ'g Corp. v. Indiana Dep't of State Revenue*, 612 N.E.2d 614, 624–25 (Ind. Tax Ct.1993). When all of these factors are considered, it is clear that *The Electric Consumer* is commonly understood to be a newspaper.

To begin with, the parties have stipulated that *The Electric Consumer* has a masthead setting forth the publisher, editor, circulation and place of publication. (Stip. at 3, ¶ 17.) Furthermore, the publication carries less than a preponderance of advertising—a point that the Department does not dispute. (*See* Trial Tr. at 30 (testimony of Emily Schilling, editor of *The Electric Consumer*, stating that the publication has never carried more than 50% advertising).) The parties do dispute, however, whether *The Electric Consumer* is authorized to carry legal advertising.

At trial, Elmer Stocker, Chief Executive Officer of Indiana Statewide, testified that the Indiana Utility Regulatory Commission (IURC) has authorized *The Electric Consumer* to carry legal advertising in order to provide public notice of rate changes to the members/customers of the REMC. (*See* Trial Tr. at 15–16.) Nevertheless, the Department argues that because *The Electric Consumer* is not authorized to carry legal advertising *pursuant to Indiana Code § 5–3–1–0.4*, this constitutes a "strike against the publication qualifying as a newspaper." (Resp't Br. at 9–10.) The Court disagrees.

Indiana Code § 5–3–1–0.4 defines "newspaper" for purposes of determining what publications are qualified to publish legal notices.[3] A publication qualifies as a newspaper under that statute if it:

rent events." IND. ADMIN. CODE tit. 45, r. 2.2–5–26(b)(2) (1996). This factor, however, was held unconstitutional by this Court's decision in *Emmis Publishing Corporation v. Indiana*

*Department of State Revenue*, 612 N.E.2d 614 (Ind. Tax Ct.1993).

**3.** Political subdivisions are generally required to publish legal notice in two newspapers

(1) is a daily, weekly, semiweekly, or triweekly newspaper of general circulation;

(2) has been published for at least three (3) consecutive years in the same city or town;

(3) has been entered, authorized, and accepted by the United States Postal Service for at least three (3) consecutive years as mailable matter of the periodicals class; and

(4) has at least fifty percent (50%) of all copies circulated paid for by subscribers or other purchasers at a rate that is not nominal.

IND. CODE ANN. § 5–3–1–0.4 (West 2005). The Department argues that "[t]he fact that the *Electric Consumer* is not published daily, weekly, semiweekly, or triweekly removes it from the definition of [a] newspaper for purposes of running legal notices[.]" (Resp't Br. at 9.) *See also* A.I.C. § 5–3–1–0.4(1). Accordingly, the Department maintains that the fact that *The Electric Consumer* is not authorized to run legal notices under Indiana Code § 5–3–1–0.4 means it cannot be commonly understood to be a newspaper.

In making this argument, however, the Department reads too much into its own regulation. First, 45 IAC 2.2–5–26(g) merely states that lack of authorization to carry legal advertising is *one* of the characteristics of publications other than newspapers. It does not state that such authorization is an absolute prerequisite for a publication to qualify as a newspaper.

Furthermore, the regulation also does not state that the authorization to carry legal advertising must be granted pursuant to any particular statute. As Carroll County REMC points out, Indiana Code § 5–3–1–0.4 provides "the qualifications for a newspaper to be authorized to run legal advertising and not the other way around, a requirement that all newspapers be able to carry legal advertising." (Pet'r Reply Br. at 4; Pet'r Ex. 37.) Therefore, the fact that *The Electric Consumer* does not qualify to run legal advertising under Indiana Code § 5–3–1–0.4 does not preclude it from being considered a newspaper for purposes of the sales tax exemption. The fact that the IURC has authorized it to run legal notices is enough to satisfy the criteria set forth by the Department's regulation.

The Department also argues that *The Electric Consumer* cannot be commonly understood to be a newspaper because its physical characteristics resemble those of a magazine more than those of a newspaper. Specifically, the Department explains that the publication has a color front page and it is stapled down the middle.[4] (Resp't Br. at 11.) Nevertheless, the Court is not persuaded that these features necessarily render *The Electric Consumer* a magazine rather than a newspaper.

The physical characteristics the Department has noted are not exclusive to magazines. Indeed, the Court takes judicial notice of the fact that many newspapers print in color, including *The Indianapolis*

---

published within the boundaries of the political subdivision. *See* IND. CODE ANN. § 5–3–1–4(a) (West 2005).

**4.** The Department also notes that the publication's managing editor, Emily Schilling, referred to *The Electric Consumer* as a magazine in an internal memo sent to the publication's accounting department. (Resp't Br. at 11–12; Stip. Ex. 41.) Schilling testified, however, that this was an error and that she

considers the publication to be a newspaper, not a magazine. (Trial Tr. at 31–32, 38.) Moreover, the relevant issue is not what Schilling called the publication, but rather, whether the publication qualifies as a newspaper under the applicable statutes and regulations. *See Haas Publ'g Co. v. Indiana Dep't of State Revenue*, 835 N.E.2d 235, 240 n. 5 (Ind. Tax Ct.2005).

*Star* and *USA Today.* The fact that *The Electric Consumer* is stapled down the middle likewise does not weigh against it being a newspaper. As Emily Schilling, managing editor of *The Electric Consumer*, testified, the publication has not always been stapled. That change was made in 1993 after readers and postal carriers alike expressed their preference that the paper be stapled so that it would be easier to handle. (*See* Trial Tr. at 28–29.) Nonetheless, the fact that the publication is now stapled does not mean it can no longer be considered a newspaper. Indeed, *The Electric Consumer* possesses the one physical characteristic perhaps most commonly associated with newspapers: it is printed on newspaper stock. (*See* Trial Tr. at 17, 27–28, 31–32; Exhibits 1–28.) *See also Emmis,* 612 N.E.2d at 624–25 (stating that the type of paper on which a publication is printed is an important characteristic in considering whether the publication is a newspaper). Furthermore, it is printed by the *Bloomington Herald–Times*—the daily newspaper of Bloomington, Indiana—on printing presses used exclusively to print newspapers. (*See* Trial Tr. at 32.)

In summary, *The Electric Consumer* possesses the common characteristics of a newspaper as specified by the Department's regulations: it carries less than a preponderance of advertising, is authorized to carry legal advertising, and has a masthead setting forth the publisher, editor, circulation, and place of publication. Furthermore, its physical characteristics more closely resemble those of a newspaper than a magazine. For these reasons, the Court finds that *The Electric Consumer* is commonly understood to be a newspaper.

### (2) *Is The Electric Consumer Circulated Among the General Public?*

■ In addition to the requirement that a publication must be commonly under-stood to be a newspaper, it must also be "circulated among the general public" in order to qualify for exemption from the sales tax. 45 IAC 2.2–5–26(b)(3). *The Electric Consumer* is distributed on a subscription basis, with the majority of subscriptions being purchased by various REMCs which then distribute individual copies to their members free of charge. (*See* Trial Tr. at 26; Pet'r Reply Br. at 4–5; Pet'r Ex. 37.) The Department argues, therefore, that circulation of the publication is actually "quite limited" because it is distributed to a narrow segment of the population; namely, REMC members. (*See* Resp't Br. at 10–11; Oral Argument Tr. at 15–16.)

Nevertheless, individual subscriptions to *The Electric Consumer* are available to any member of the general public, regardless of whether he or she belongs to a REMC. (Trial Tr. at 26, 31.) During the audit years, an average of 124 copies of *The Electric Consumer* were distributed to non-REMC members each month. (*See* Pet'r Ex. 37.) Although this number may only account for a small portion of the publication's overall circulation, it is not insignificant. Moreover, although *The Electric Consumer* is distributed primarily to REMC members, it is nonetheless widely circulated. Indeed, its current statewide circulation of approximately 250,000 copies per issue (Pet'r Reply Br. at 5) is substantially greater than that of many local newspapers throughout the state of Indiana. Accordingly, because *The Electric Consumer* is available to the general public and is widely distributed, the Court finds that it meets the criteria of being "circulated among the general public." *See* 45 IAC 2.2–5–26(b)(3).

### (3) *Is The Electric Consumer Published At Stated Short Intervals?*

■ The final issue contested by the parties is whether *The Electric Consumer*

is published frequently enough to be considered a newspaper for purposes of the sales tax exemption. In order to qualify as a newspaper, a publication must be "published at stated short intervals[.]" 45 IAC 2.2–5–26(b)(4). In contrast, "[p]ublications issued monthly, bimonthly, or at longer or irregular intervals are generally not considered to be newspapers." 45 IAC 2.2–5–26(e). The Department argues that because *The Electric Consumer* is published on a monthly basis, this constitutes another "strike against the granting of exemption." (Resp't Br. at 8.)

■ This Court has stated that "the frequency of publication is the foremost content-neutral factor evident in the consideration of whether a publication is a newspaper." *Emmis,* 612 N.E.2d at 625 (citation omitted). The Court went on to note, however, that "frequency of publication standing alone [ ] is not an infallible empirical measure of whether a publication is a newspaper." *Id.* Indeed, 45 IAC 2.2–5–26(e) allows for some flexibility in this regard by stating that publications issued monthly, bimonthly, or at longer intervals "are *generally* not considered to be newspapers." 45 IAC 2.2–5–26(e) (emphasis added). Thus, frequency of publication is not an absolute criterion in determining whether a publication is a newspaper.

*The Electric Consumer* has been published on a monthly basis since its inception in 1951. (Stip. at 2, ¶ 5.) From 1951 until the issuance of its 2000 LOF, the Department classified *The Electric Consumer* as a newspaper exempt from sales tax, despite the fact that it was published on a monthly basis. Moreover, the publication meets every other requirement for classification as a newspaper. Accordingly, the Court cannot find that frequency of publication is a determinative factor in this case.

## CONCLUSION

For the foregoing reasons, the Court finds that *The Electric Consumer* is a newspaper because it is: (1) commonly understood to be a newspaper; (2) circulated among the general public; and (3) published at stated short intervals. Therefore, Carroll County REMC's purchases of *The Electric Consumer* are exempt from the sales tax pursuant to Indiana Code § 6–2.5–5–17. The Court therefore REVERSES the Department's final determination prospectively assessing Carroll County REMC with sales tax.